on the ground with the EPA, the Department of the State. Good morning and may it please the court, Tosh Sager on behalf of Petitioner of Sierra Club, I'd like to reserve three minutes for rebuttal. There's no dispute here that when states revise their SIPs, they must provide reasonable notice, public hearings, and that EPA must go through notice and comment rulemaking. So the primary issue presented here is, does a state revise its SIP when the state makes changes to its monitors as part of EPA's annual monitoring process? But this is a SIP... And at least so far as it's relevant, the amendment to 58.10A1 seems not to say anything about that subject. It slightly expands the... It changes the wording for the presentation of objections by people to changes to monitoring plan, right? So that seems orthogonal, mildly, to the broader claim that you're making. Your Honor, whether or not a monitoring, change to a monitoring plan requires the procedures for SIP revisions was the heart of the comments. EPA here said, proposed a rule that wouldn't have required the procedures relevant for SIP revisions. Commenter said that these changes were SIP revisions, and therefore the rule had to require states to go through the SIP revision procedure. And EPA said no, and finalized rules that are less than what SIP revisions require. And so... Your Honor, it seems to me that the premise of what you're saying is that if an agency starts a rulemaking on one subject, by participating in the proceeding and raising a fairly radically different alternative, the party raising the alternative can essentially capture the proceeding and make the subject of the proceeding its proposal rather than what EPA started with. And let me just say that normally, it seems to me, this is something handled under our cases like NLRB union, versus NLRB union, I guess against NLRB, I forget. Anyway, where we make it clear that if you want a change in an existing regulation, you file a petition asking for such a change and explaining why it's appropriate. Why shouldn't Sierra Club have done that here? Your Honor, I'm not familiar with that case in part because EPA hasn't raised it. I think cases... Yeah, they make a similar equivalent argument, which is that we don't have a final order here on this subject. That's not correct, Your Honor. Here we have a final rule. We have a final rule undoubtedly, but the final rule doesn't say anything about your topic. It does, Your Honor, because the final rule prescribes the procedures that are required by States when they revise their monitoring plans. And if you accept our merits claim, which you must for purposes of jurisdictional issues, then those are SIF revisions. And so our claim is this rule encodes a deficient set of procedures. And that was what the comments said. And EPA itself responded to those comments and said they don't encode a deficient set of procedures because these aren't SIFs and their States don't revise their SIF. And so... There was undoubtedly a clash between your position and EPA's position. That's clear. But in terms of the original proposal, there was no need for EPA to have addressed this issue. It was making some amendments. It made them. But those amendments are at the heart of what is or is not a SIF. And I think your point about finality, I think we've addressed finality. You raised another point about NLRB union. I don't think EPA has raised that, and I think that's waivable if they have. Finality is not waivable. Finality is not, but we have satisfied the requirement for finality here. There's a final rule. We are challenging that rule as deficient. And that's the core of our challenge. Now, the reason EPA gave is part of the record, and it's subject to review by this Court. It's part of the whole record. It's their explanation why the rule is lawful. And so this Court, if that part, if it wasn't part of the, if it wasn't subject to review, then EPA would have no rationale for the rules it encoded. These are new rules. And so there's a final rule. That's what we're challenging. They're new in a very limited respect. This is a very mild expansion of the comment rights of people. That's the respect in which EPA is making a change in the rule. For purposes of finality, is change, is a change that's challengeable? And it's not just It's challengeable, but you don't object to the new language that expands it from public inspection and comment and so forth. We do object because it's not just, they claim it's an expansion. It's not just an expansion. That's wrong. The old rule in 2006 said that at the EPA review stage, EPA would provide a second round of notice and comment if the state had made a change after the state went through its public participation. And they've removed that. So they've weakened one aspect of the old 2006 rule. On top of that, we debate 2006 rule or the commentary, the explanations offered by EPA. The prior version of 58.10 would have allowed, would have provided that EPA would have given its own notice and comment if states made changes. They've eliminated that. And let me see if I can find the JA site for that, Your Honor. I don't have it right at this moment. I'll provide it on rebuttal. But they've weakened this rule in some respects. And secondly, the point is the final procedures that they encoded here are less than what the statute requires. And that was our objection. If we get to the merits, we address that issue. But I think that's relevant to the question of whether there's final agency action, which we're challenging. That's what we're challenging. We're saying these procedures are unlawful. And that's final. That doesn't make action with respect to other changes in the regulation final action on this issue. EPA says here that states only have to provide public inspection opportunity. They say that states don't have to provide hearings. You're talking about the preamble. The rule itself says that states only are required to provide 30 days public inspection and respond to comments given during that time. Is that a change? That is a change, yes. Previously, that rule said that EPA only had to provide for public inspection. There was no requirement for comment. And then it, excuse me, states only had, I'm sorry, Your Honor. Previously, the rule said that states only had to provide public inspection. They've changed that to inspection plus a response to comments. Second, that rule used to say that after states submitted their plans to EPA, EPA itself would provide a second round of notice and comment if the states had made changes after the public had given the states some comments. That seems much narrower than the, sounds much narrower than the contention you're making. EPA has eliminated that requirement. There was a requirement for a second stage of EPA review, and EPA has eliminated that here. So they've both, they've weakened the rule in some respects, and they've changed it in others. And our contention is, what's left, regardless, what's left this new rule is less than what the statute requires. So there was notice and comment with respect to the EPA under the old rule, and there is no notice and comment in the new rule? There was notice and comment that was triggered by specific factual circumstances of what took place at the state level. But it wasn't what we're arguing for here, which is universal notice and comment. And they eliminated that. Even that limited notice and comment period, they eliminated. So for purposes of finality, there was a rule change here, and we're challenging these new rules as deficient. Excuse me, the new rule you're focusing on is 58.10a2, is that right? I believe that's the correct site. Assuming that's right, can you point me to the prior language? Yes, Your Honor, give me one second. I'm apologizing in advance for the delay here. This is a JA 328. This is 58.10a2, and it says at the bottom, if the state or local agency has already provided a public comment opportunity on its plans and has made no changes, the regional administrator is not required to provide a separate opportunity for comment. But above it says, EPA regional administrator shall provide opportunity for public comment if they have made changes. And that's been eliminated. Give me that JA page again. JA 328. If I could, turn to the merits, Your Honor. EPA has provided two rationales in this here, one in the rulemaking itself, one in a post hoc rationale in their brief. They both fail for the very same reason. Applying the traditional tools of statutory construction, the statute is unambiguous. The provisions of the SIP itself must require the state to establish and operate monitoring systems. But under either of their interpretations, the SIP would not require the state to do any monitoring. Their original interpretation would just require a list of authorities to demonstrate that the state could do monitoring. That interpretation is one they don't even bother to defend, and it's clearly unlawful. Because where Congress wanted a SIP to list authorities, it said so expressly, as in 7410A2E. Their post hoc interpretation similarly fails. It would not require monitoring. All it would require is the state to submit a paper plan to EPA, but that paper plan would be outside the SIP. And because the only thing that is enforceable under 7410 are the terms of the SIP itself, the SIP wouldn't require any monitoring. The state's obligations would be at an end once it submits the monitoring plan to EPA. At Step 2, their interpretation fails as well, even if you get to Step 2. Under the Part 58 regulations, EPA commands states to operate numerous monitors, costing hundreds of millions of dollars per year. And the only source of authority for EPA to direct states to do monitoring is 7410 itself. And that means the Part 58 regulations, which specify how many monitors, which monitors, what pollutants, those commands to the state must implement 7410. And what this Court has said in cases like Michigan versus EPA, which we cite in our brief, is that a rule implementing 7410 sets minimum compliance requirements for the SIP, for the contents of the SIP. And here all of their regulations in Part 58 pertaining to state monitors are therefore regulations for what must be in the SIP. And there are at least four in DSHA from their regulations and their brief that demonstrate that. How long has EPA taken this sort of less formal view of how to revise the monitoring networks? It's not entirely clear, but I think it's fair to say for several decades that they have taken this less formal approach. Why are you challenging it now? Why didn't you challenge it earlier? Well, this rulemaking is final action and we can challenge it now. There's no requirement, there's no statute of limitations problem. They haven't raised that issue because this is a new rulemaking and a new rule. And so we had an opportunity and Congress directed us to bring this action within 60 days of the rule and we did. These are problems for real people. There are people out there who rely on these monitors. And there were no other rules that were issued before that would have been a vehicle for this challenge? There may well have been, Your Honor, and we don't dispute that perhaps we could have brought a challenge earlier, but we are allowed to bring this challenge now and there are real people with real issues at stake. People who rely on these monitors for medicine, people who rely on these monitors for real-time warning about when it's safe to go outside, when to take medicine. There are people like Patty Shuba who live near one of the largest court plants in the country and she wants a hearing. She regularly attends hearings related to this plant. She wants a hearing on monitors because there aren't sufficient monitors around that area. So there are real people with real issues at stake and this court has jurisdiction to hear this claim. If I could just make one point. Their own regulations say that the Part 58 sets requirements for SIPs. And that in and of itself demonstrates that the requirement that states identify monitors, which is in Part 58, is a requirement for the SIP. EPA says that if a state isn't complying with the Part 58 requirements for state monitoring, it can disapprove the SIP. But under the statute and under this court's precedence, EPA may only disapprove a SIP if it fails to meet the requirements of 7410, confirming that these are 7410 requirements for SIPs. And that's Michigan versus EPA. That's exactly what this court said. Okay. Unless my colleagues have further questions, we'll give you some time. All right. Thank you, Your Honor. Thank you. May it please the Court. Philip Dupre for EPA. With me at counsel table is Jonathan Skinner-Thompson from EPA's Office of General Counsel. I want to first highlight a comment made by my colleague here, and that is that the functional interpretation of this statute has been in place at EPA for decades. Despite what they put in the briefs, this is not a change in position by EPA. And I think I really want to focus the Court's attention to what Judge Williams pointed to, which is the relatively modest change in the public participation requirements for monitoring plans. At JA 328 was regulations adopted in 2006, which stated annual monitoring network plans must be made available by states for 30 days prior to submission to EPA. And then if the state agencies did allow for comments, that would be the end of the issue. But if they did not allow for comments, the regional administrators would accept comments on those monitoring plans when submitted by EPA. In this rulemaking, what EPA sought to do was streamline it and said, what we're going to do is we're going to require states to not only make their plans publicly available for 30 days, but for them to accept comments as well on those plans and then to address those comments as appropriate in its submission to EPA. And indeed, that is what states are doing. EPA views this as essentially strengthening the public notice and comments procedures for monitoring plans. Obviously, opposing counsel has a slightly different view, but whether you think of it as a strengthening or a changing of the public notice requirements for monitoring plans, it is clearly within the same general framework that EPA has been using for decades. Actually, I hadn't focused on the difference between the earlier A2 and the current A2. So what's your summary of that change? Basically, what the prior A2 said is states were allowed to accept public comments on their plans, and if they did accept public comments and address them, EPA would not solicit public comments on monitoring plans. But if states didn't accept public comments, EPA would accept public comments. And what EPA changed in its new version is it basically said, we're going to accept public comments. In other words, states have to deal with these comments in the first instance, which I think makes sense because states are the primary drivers of these monitoring plans. I'm sorry, where's that new language mandating that the state notice and comment? Yes, it is on JA-74. At the bottom left, it says under 5810, the annual monitoring network plan must be made available for public inspection and comment for at least 30 days prior to submission to EPA, and a submitted plan shall address as appropriate any received comments. And so essentially what that does is it lets, first off, the state address public comments in the first instance. But secondly, it still gives EPA the opportunity to, you know, if public comments are not addressed as EPA believes are appropriate, of course EPA could disapprove the plan or approve the plan with conditions or take whatever appropriate action it deems fit based on the public's comments on the monitoring plan. You know, I think just briefly I want to touch on the distinction between sort of infrastructure SIPs, infrastructure state implementation plans, which generally are the sources of legal and regulatory authority by which states seek to implement and enforce the Clean Air Act, and monitoring plans, which have to do with the very granular details of where are monitors set up and how many times will they draw air to review emissions. And while clearly these are important decisions as to the physical setup of a monitoring network, EPA has long viewed, really since 1980, that these details are best left to informal adjudications like we have here, where states can go, submit to the regional administrators where they want to put the monitors, how they want to use them, and that that information, or excuse me, that plan doesn't have to go through the formal process for state implementation plans, which require both a public hearing at the state level, but also formal notice and comment at the federal level for approval. So I think, again, Judge Williams, I think you had it right. This is EPA's longstanding position on how it's treating monitoring plans. It is not a change here. EPA's comments in the preamble I think are important to point out. It was made in response to comments. EPA was not intending to address, writ large, the interaction between the state implementation plan regulations and monitoring plan regulations in this rulemaking. It was simply updating the monitoring plan rulemakings. Thus, you saw the minor change in how public comments would be addressed by states. Earthjustice submitted comments saying, we think you are required to treat these monitoring plans, the state implementation plans themselves. In response to those comments in the rulemaking, EPA explained why it did not believe those changes were appropriate. And largely, the challenge here goes to EPA's statement in the preamble, which was not designed to be the penultimate statement of the agency on what is required in state implementation plans. Indeed, we would point the court to Part 51 of the federal regulations, which address state implementation plans in particular, as well as the 2013 guidance that was issued on infrastructure state implementation plan submissions. Lastly, I would just like to touch briefly on the substantive regulations, the spherical challenges. The first has to do with minor changes to how states monitoring frequency for addressing PM 2.5. These changes allow states to ask the regional administrators to let them reduce the sampling monitoring frequency from once every three days to once every six days, provided certain criteria are met. Sierra Club objects on the grounds that EPA did not fully explain the financial harm or financial burdens on states with respect to this rulemaking. I think the record is clear. EPA explained that monitoring is a burden on states, and that this decreased frequency done in a very careful manner to ensure that there would be no substantively harmful effects on states, meaning the max is appropriate. Lastly, Sierra Club objects to an error in the final rule, in which EPA stated that it received no adverse comments on changes to how it treated quality assurance programs and the prevention of significant deterioration monitoring requirements. As we know in our briefs, that was an error. In fact, Earthjustice did object to those provisions. However, not only do we not believe these rise to the level of significant objections for which a response is required, but we believe that if you look at the record, the explanation for each of those changes that Earthjustice objected to, that there is a clear explanation that addresses the substance of the comments, even if it was not specifically noted as a reply or response to those comments. For all those reasons, we believe that petitions should be denied in full. At this time, I'd be happy to answer any questions. Thank you very much. Thank you. Thank you. Could you explain to us where looking at the old A-1 and A-2 and the new A-1 and A-2, you see an adverse change? Yes, Your Honor. At 58.10 A-2, EPA said that it would- We're talking about new or old now? The old 2006 at 328. Right. EPA said it would provide a notice and comment here at the EPA approval stage, and then they have eliminated that. That requirement is no longer in place. That is harmful to us. That is a change. They have conceded that they changed the rule, and there's no question that we are- Just going back a moment, in the old version, it makes that requirement subject to cancellation if the State or local agencies provided a public comment opportunity. That's correct, Your Honor, but- So then when we go to the current version, is that not still required? In the current version, there's no notice and comment opportunity at the EPA level. That's completely- But the only requirement in the old version is contingent, right? Yes, there was a requirement. So the question is, is that contingency removed? It's totally eliminated. Previously, there was opportunity for notice and comment under some circumstances, and now there is no notice and comment opportunity. That is a change. That is a changed rule. We have less procedures than we did before, and that counts for- This is a finality. They concede. My colleague just conceded that they did change the rule, and not only did they change the rule- Yes, but he says it changed it in the opposite direction from your argument. But that's wrong, Your Honor. Before, EPA would provide the opportunity for notice and comment in some circumstances, and now it will never provide notice and comment. They said that in their own brief, that EPA doesn't provide notice and comment, and I believe they said it in the preamble to this rule. Most likely at 46, I think they said, EPA disagrees that action on annual monitoring plans requires a separate notice and comment opportunity. That's at JA 46. So they've eliminated that- As I look at this, the new rule, and maybe this language is not new, the part in A1 mandates availability for public inspection and comment before submission to the EPA. So that seems to be an unequivocal mandate. Your Honor, there are two stages of public participation that are at issue here, one at the state level and one at the EPA level, and it's unequivocal. They admit that at the EPA level, they made a change that is adverse by eliminating any requirement that EPA go through notice and comment. Yes, but in the earlier version, the EPA obligation was contingent, and now the regulation seems to require unequivocally the state provision of an opportunity for comment and therefore eliminates, makes illegal the condition under which EPA's obligation was formerly triggered. Yes, but our claim is that we need public participation in both. Congress mandated public participation in both. Put aside the merits. Just focus on the change, if any. Your Honor, focusing on the change, they have eliminated the requirement that EPA go through notice and comment. But that requirement was contingent, and now that contingency becomes in itself an unlawful one. But let me explain why it matters that EPA was required. EPA has an independent obligation under 7410 to review. But formally, it regarded its own notice and comment provision on that issue to be unnecessary if the state provided a similar opportunity, right? Isn't that what the passage 328 points us to? That's what my colleague just said. Well, how is it wrong? Because EPA has an independent obligation here. You're jumping into the merits. I'm trying to figure out whether there's any change and whether it's in the direction that you claim. That is a change, and it is to our detriment. And I don't think we can simply separate the merits. I think this Court has held on to it. We're trying to get into the existence of change and its nature. And what I see is that a contingent EPA obligation to have a comment opportunity becomes irrelevant when that contingency is extinguished, as it appears to be, by the new rule. Respectfully, we disagree, Your Honor. There was a change here from the prior rule. It was a mandatory comment period that in some situations was not. In some situations. But those situations are extinguished. It's a legal matter. I don't think that's relevant for purposes of finality here. Now, if you were to do that change, I would see the point that you're objecting on a much broader scale. We're objecting to the procedures here. And the reason EPA gave for their deficient procedures is a new interpretation in the 2016 rulemaking. It's one they claim is the same, but EPA never before in a binding rulemaking said that SIP only has to list authority for monitoring. They've never said that before in a binding rulemaking. Our comments were directly targeted at the procedures. Our comment said that these procedures are insufficient because they are not grounded in the text of the Act. They're contrary to the text of the Act. And EPA responded to those comments by adopting a new interpretation that formed the basis for this rule. We are objecting both to the procedures and to that interpretation. And they offer no valid substantive defense. Thank you, Your Honor. The case is submitted.
judges: Griffith, Wilkins, Williams